## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### FORT LAUDERDALE DIVISION

MARLOWE D. ROBINSON,

               Plaintiff,

vs.

Case No.

BROWARD COUNTY SCHOOL DISTRICT, ROBERT W. RUNCIE, RICHARD VOLPI, JEFFERY MOQUIN, DOUG GRIFFIN, CRAIG KOWALSKI, ERIK LOPEZ, ERIC, CHISEM, AND SUSAN COOPER, individually; and in their official capacities,

               Defendant(s).

_____/

FILED BY _____ D.C.

SEP 1 2 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

### COMPLAINT

Plaintiff, MARLOWE D. ROBINSON, Pro Se ("Mr. ROBINSON" or "Plaintiff"), pursuant to Rule 4(a), Federal Rules of Civil Procedure, sues Defendants, Broward County School District ("SBBC" or the "District"), Robert W. Runcie, Richard Volpi, Jeffery Moquin, Doug Griffin, Craig Kowalski, Erik Lopez, Eric Chisem and Susan Cooper, individually; and in their official capacities, alleges as follows:

### INTRODUCTION

1.    Plaintiff, seeks compensatory and punitive damages, and all other relief allowed by law under the Florida Civil Rights Act, Florida

1

Statute § 760.01, et seq. ("FCRA"); the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1964) Title VII; 42 U.S.C. § 1981, § 1981(a), et seq. and 42 U.S.C. § 1983; the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. (1964) Title VI; Protection of School Speech, Fla. Stat. § 1003.4505; and, U.S. Const. Amend. I., First Amendment against the following:

## VENUE AND JURISDICTION

2.      This Court has subject matter jurisdiction pursuant to Title 28 § U.S.C. 1332(a)(1), to adjudicate the Plaintiffs' claims against the Defendant[s] pursuant to the foregoing Federal and State law. *Strawbridge v. Curtiss*, 3 Cranch 267, 1806 WL 1213, at*1 (February Term 1806). *See also Da Silva v. Kinsho Int'l Corp.*, 229 F. 3 d 358, 363 (2d Cir. 2000)(delineating two categories of subject matter jurisdiction)

3.      All of the complained actions by each Defendant which form the basis for this Compliant occurred in Broward County, Florida.

4.      This is an action which seeks enforcement of and protection under the Family and Medical Leave Act of 1993, 29 USC Section 2601, et. Seq. (hereafter referred to as "FMLA") and claims damages in excess of $75,000.00, exclusive of fees and costs.

## PARTIES

5.      School Board of Broward County,  Florida ("SBBC") is a political subdivision of the State of Florida that has received notice of this claim on or before June 1, 2017, pursuant to § 768.28(6), Florida Statute. (a copy is attached and incorporated by reference as **APPENDIX EXHIBIT "A"**).

6.      School Board of Broward County,  Florida ("SBBC") has its principal place of business at 600 Southeast Third Avenue, Fort Lauderdale, Florida 33301.

7.      At all times material to this complaint Defendant "SBBC" employed more than 15 persons in each of twenty or more calendar weeks in the current or previous calendar year and was an "employer" as defined by § 760.02(7), Florida Statute and 29 U.S.C. § 630(b).

8.      At all times material to this complaint Defendant Robert W. Runcie, ("Defendant Runcie") is an African American male and worked in Broward County, Florida,  formerly employed by "SBBC"  as School District Superintendent under § 1012.01(3), F.S.

9.      At all times material to this complaint Defendant Richard Volpi (Defendant Volpi), is a Caucasian male and works in Broward County,

3

Florida, and employed by "SBBC" as Manager, Administrative Support Department.

10.    At all times material to this complaint Defendant Jeffery Moquin ("Defendant Moquin ") is a Caucasian male and works in Broward County, Florida, and employed by "SBBC" as its Chief of Staff.

11.    At all times material to this complaint Defendant Doug Griffin ("Defendant Griffin ") is a Caucasian male and works in Broward County, Florida, and employed by "SBBC" as School Board Counsel.

12.    At all times material to this complaint Defendant Craig Kowalski ("Defendant Kowalski") is a Caucasian male and works in Broward County, Florida, and employed by "SBBC" as Interim Chief Special Investigative Unit (SIU).

13.    At all times material to this complaint Defendant Eric Chisem ("Defendant Chisem") is an African American male and works in Broward County, Florida, and employed by "SBBC" as Director of Non-Instructional Staffing.

14.    At all times material to this complaint Defendant Susan Cooper ("Defendant Cooper") is a Caucasian female and works in Broward County, Florida, and employed by "SBBC" as Employee Relations Specialist.

15.   At all times relevant and material to this complaint, Plaintiff Marlowe D. Robinson, is an African American (Black) male and was employed by "SBBC" as "Head Facilities Service Person" which duties encompasses preventive maintenance that is not performed or completed while staff and students were present at various schools.

## SATISFACTION OF CONDITIONS PRECEDENT

16.   Plaintiff has exhausted all administrative remedies for the claims herein which encompasses exhaustion of administrative remedies inclusive of pursuing an appeal from an administrative ruling. See Division of Administrative Hearings,  <u>Marlowe D. Robinson v. Broward County School District</u>, Case No.:17-6239 *See also, Fla. High School Athletic Ass'n v. Melbourne Cent. Catholic High School,* 867 So.2d 1281, 1288 (Fla. 5th DCA 2004); *see State, Dep't of Transp. v. Hendry Corp.,* 500 So.2d 218, 221 (Fla. 1st DCA 1986); *Sawyer v. Wainwright,* 422 So.2d 1027, 1028 (Fla. 1st DCA 1982).

17.   The Plaintiff and all of the Defendant[s] before the Court are *sui juris.*

18.   Consequently, on April 12, 2017, plaintiff submitted a formal complaint to the Florida Commission on Human Relations (FCHR) and United States Equal Opportunity Commission (EEOC), alleging

discrimination due to denied disability benefits afforded under ADA; and a complaint for retaliation by defendant Volpi and Defendant Moquin.

19.     On May 4, 2017, Alicia Maxwell,  Investigative Specialist, Florida Commission on Human Relations acknowledged plaintiff's complaint and initiated FCHR review on May 9, 2017.

20.     On July 6, 2017, FCHR sent its report of defendant "SBBC'S" 'Position Statement' to plaintiff and on July 7, 2017, forwarded its final decision dismissing plaintiff's complaint without an investigation. FCHR dismissed Petitioner's Charge with a "No Reasonable Cause" Determination.

21.     On August 14, 2017, plaintiff filed a notice of appeal to the First District Court of Appeal, which was transferred to the Fourth District Court of Appeal, which court affirmed on April 18, 2018.

22.     Thereafter, plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC),  alleging discrimination under ADA because he was denied a promotion by the defendant[s] on grounds of his race and medical deficiencies. (See attached copies of Veteran's Administration Determination  incorporated by reference as **APPENDIX EXHIBIT "D")**

23.    The Equal Employment Opportunity Commission (EEOC) provided plaintiff its decision and Notice of Right to Sue on September 16, 2017.

24.    On December, 6  2018, Judge Mary Li Creasy, Administrative Law for the Florida Division of Administrative Hearings issued its recommended order" as a final order dismissing Plaintiff's FCHR Petition# 201700954.

25.    Acting in proper person plaintiff filed a Complaint in the United States District Court, Southern District of Florida, alleging Federal constitutional and statutory claims, as well as claims under "Florida Civil Rights Act of 1992." (See     copy    of    USDC,    Case Number-**19-63009-CIV-SMITH** order attached and incorporated by reference).   The complaint sought damages under 42 U.S.C. § 2000e *et seq.* (Title VII) for racial discrimination; Florida Civil Rights Act, Florida Statute § 760.01, et seq. ("FCRA"); the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1964) Title VII; 42 U.S.C. § 1981, § 1981(a), et seq. and § 1983; the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. (1964) Title VI; Protection of School Speech, Fla. Stat. § 1003.4505; and, U.S. Const. Amend. I., First Amendment.   Ultimately the Court dismissed the case without prejudice on July 14, 2020.

26.    All conditions precedent to the maintenance of this suit and Plaintiff's claims has otherwise been fulfilled, performed or occurred.

27.    Under Section 760.10(1(a), Florida Statute,   it is an unlawful employment practice for an employer to    ". . . To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, *handicap*, or marital status."

28.    Under Section 230.22(1)(2), Florida Statute, both the school board ("SBBC") and defendant Runcie held a fiduciary duty for efficient operation and improvement for the school district, including but not limited to, enforcing, without delay all state and federal laws pertaining to unlawful discrimination, according Section 760.10(1(a), Florida Statute.

**GENERAL ALLEGATIONS**

29.    Plaintiff began employment with defendant "SBBC" on April 7, 1998 held the position of laborer between 1998 and 2000.

30.    On October 2, 2000, Plaintiff advanced to the position of "Head Facilities Service Person"   directly under supervision of defendants Volpi, Moquin, and Runcie.

31.     Although Plaintiff was classified as "Head Facilities Service Person", he performed the duties of a *"Building Operations Supervisor"*. [1]

32.     Plaintiff complained to the "SBBC" Human Relations Department on February 18, 2016, seeking reclassification to the "Building Operations Supervisor" title and retroactive compensation for past due wages for "working out of classification".

33.     Defendant Volpi denied the complaint[s] finding *no basis* for the complaint/grievance under the collective bargaining agreement, contrary to the provision of the "SBBC" and "FOPE" contract. **(See Val Williams letter dated August 24, 2016 attached and incorporated by reference as APPENDIX EXHIBIT "B").**

34.     Plaintiff submitted a complaint to the Public Employees Relations Commission pursuant to §§ 295.07 and 295.14(1), Florida Statutes, on August 24, 2016, which alleged unfair labor practices by "SBBC" as stated in paragraph 22 *supra*.

35.     Plaintiff filed a grievance on October 18, 2016, which alleged insufficient personnel to accommodate the building sanitation and health care standards required by the Occupational Safety and Health Act (OSHA).

36.     Plaintiff filed a on October 19, 2016, alleging defendant

---

[1] Building Operations Supervisor oversee all the activities within a specific department or area of an SBBC. They monitor the efficacy of the department, improve operating processes, and report to upper management. Operations supervisors work in a variety of settings, depending on the industry they work within.

Volpi subjected him to inappropriate and unwelcomed physical contact on October 18, 2016, without invitation or consent.

37.    Thereafter, as provided in the "SBBC" policy and procedures manual, defendant Volpi was required to transfer the grievance to a separate office.  Instead, defendant Volpi denied the grievance[s] without procedural translation to any superior management official for inquiry and without any action.

38.    Notwithstanding that Israel Canales, Manager, Administrative Support Department, advised plaintiff that he was eligible and qualified for the "Building Operations Supervisor" position,  defendant Volpi denied Canales' recommendation without cause or procedural compliance.

39.    Plaintiff filed a grievance October 19, 2016, which alleged that defendant Volpi failed to pay plaintiff overtime wages contrary to the Equal Pay Act.

40.    Additionally, plaintiff filed a grievance with Susan  Cooper of the "SBBC" employment relation department on October 19,  2016, which alleged  that defendant Volpi failed to pay overtime wages to subordinate staff members contrary to the Equal Pay Act.

41.    Acting under his supervisory status, Plaintiff submitted a grievance on or about March 21, 2017, to defendant Runcie asserting

10

bullying conduct by Erik Lopez upon subordinate staff Dunia Gill contrary to "SBBC" Anti-Bullying Policy 5.9, (F.S. s.1006.147); and of a conspiracy consistent with a "long-standing custom, policy, and/or practice" of deliberate indifference of abuse within the Broward County School District.

42.     Plaintiff filed a grievance on October 19, 2016, which alleged that defendant Kowalski's failure to specifically investigate plaintiff's reports of improper activities, where administrative staff performed illegal conduct in the verbal scolding of Ms. Dunia Gill publicly; and causing a hostile work environment due to a continued fear of unwarranted reprimands were unlawful acts in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. (1964) Title VI.

43.     Plaintiff submitted a memorandum notice to defendant Runcie of the foregoing abuse of Ms. Dunia Gill by defendant Lopez. after learning of the Dunia Gill abuse, defendant Runcie failed to perform his statutory obligation to other staff personnel, instead, defendant Runcie recommended the odious suspension of the plaintiff to the School Board.

44.     Plaintiff filed a grievance alleging that defendant Moquin falsely represented "that plaintiff and Israel Canales had someone else in mind for the 'utilities service person already" to a potential job change candidate (Edwin Gutierrez) without plaintiff's knowledge, permission or

consent as required by "SBBC" policy and procedures manual; and that such statement was completely false and no such placement was applied during plaintiffs' employment.

45.     On or about April 7, 2017, plaintiff filed a grievance alleging that following plaintiffs' submission of the formal grievance[s] between February 18, 2016 through April 7, 2017, defendant Volpi's unwarranted suspension against plaintiff was an act of retaliation contrary to "SBBC" policy and procedures . **(See attached copies of seven (7) formal grievances incorporated by reference as APPENDIX  EXHIBIT "C")**

46.     Notwithstanding his medical infirmities unwarranted harassment by defendant Volpi, the plaintiff continued his pursuit of redress; and ultimately on April 20, 2018, defendant Chisem sent a recommendation that the plaintiff be terminated.   On May 9, 2018, Defendant "SBBC" administrators terminated plaintiff unlawfully contrary to Federal and State law.

47.     At all times relevant and material to this complaint the Plaintiff was employed by the defendant[s] "SBBC"; and was eligible for advancement according the Policies and Procedures of "SBBC" with eight (8) professional certificates of proficiency stemming from 1998 to 2017.

(See attached certificates incorporated by reference as **APPENDIX EXHIBIT "E")**

## COUNT I

### A.

## VIOLATION OF UNFAIR LABOR PRACTICE ACT BY SUPERINTENDENT ROBERT W. RUNCIE

48.    Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-47 above, as if fully stated therein.

49.    During the time period relevant to this complaint, defendant Runcie was the Superintendent of the Broward County School District[2]. Defendant Runcie held a statutory and fiduciary duty as executive officer of BCSD to maintain a safe work environment, yet, Defendant Runcie neglected to investigate plaintiff's protected activity in disclosure of Erik Lopezs' abusive conduct allegations including those reported by administrative personnel Jeffery Moquin and Israel Canales.

50.    As a direct and approximate result of his omission by failure to use ordinary care under all circumstances in the performance of a duty imposed upon him as Superintendent of the Broward County School District,

---

[2]    As Superintendent, Runcie was the executive officer of the School Board, *see* Fla. Stat. § 1001.33, tasked with implementing and enforcing School District policies set out by the School Board, as well as supervising and disciplining employees.

plaintiff has suffered the proximate charges of discrimination, retaliation and inappropriate contact harassment as set forth herein.

51.     Notwithstanding that SBBC operations and maintenance facilities were understaffed, defendant Chisem permitted application of unfair labor practices by declining to rescind the culturally bias test which was administered to plaintiff's subordinate staff, which failure by defendant Volpi provided for only four (4) fulltime and one (1) subordinate facility service persons to perform the maintenance services required at the KCW Building night shift.

52.     Throughout the relevant time period in this case, defendant Runcie did not report the egregious conduct of the defendants to the appropriate authorities, despite their state-mandate reporting obligation. See 1001.51, F.S. (2018).

53.     The negligence of the superintendent in the performances of his official duties renders him and "SBBC" liable upon the claims set forth in this complaint.

54.     On or about May 2, 2017, plaintiff submitted a grievance complaint asserting that defendant Runcie failed to perform his statutory obligation to recommend the placement of school personnel; and to require

compliance and observance of all rules and regulations of the "SBBC" and the laws of the State of Florida,

55.     Defendant Runcie willfully neglected to perform his fiduciary duty by not correcting the misconduct of defendant Volpi by not reclassifying the accurate job title and pay scale for plaintiff as implied and agreed to on August 24, 2016 [3] ; by failing to enforce disciplinary action against Erik Lopez for verbal abuse upon Dunia Gill on August 18, 2015; by failing to implement policy that ensure material investigative evidence be secured; by failing to implement policy that ensure the non-instructional *Facility Service Person* employee test curriculum meets Federal guideline prohibitions against biasness.

56.     On December 19, 2016, "SBBC" afforded "reasonable accommodations" for plaintiff's medical conditions of sleep apnea, hypertension, PTSD, degenerative spinal disc disease, spinal stenosis, knee problems and of the surgery on his left wrist, but were not implemented until January 12, 2017.

57.     On or about October 2, 2010, Plaintiff became eligible for placement to the position of "Building Operations Supervisor" based upon

---

[3]     See "SBBC" correspondence Valerie Williams, Esq.. dated August 24, 2016 "SBBC" reclassification decision which never proceeded to FOPE Arbitration attached and incorporated by reference.

his qualifications and sought advancement to this position which earnings outweigh the salary plaintiff was receiving.

58.     Plaintiff consulted Israel Canales, Manager Administrative Support,  regarding this job promotion with a step twelve status.   Mr. Canales replied that plaintiff does qualify for the position.   Mr. Canales contacted Lorenzo Calhoun, who advised "that it will be taken care by making the necessary transition because plaintiff met the qualification."

59.     Notwithstanding defendant Runcie's awareness that plaintiff performed the duties of "Building Operations Supervisor" and that he did not receive the salary associated with that position, defendant Runcie did not acknowledge or endorsed a salary increase as presented by Lorenzo Calhoun of Canales's recommendation for reclassification to the Building Operations Supervisor.

60.     At all times material and relevant SBBC operations and maintenance facility(ies) were understaffed, which supports the claims set out by plaintiff due to defendant Runcie's continued failure to perform his statutory obligation under Section 1005.51, F.S.

61.     Plaintiff alleges that defendant Runcie failed to perform his statutory obligation to recommend the placement of school personnel; to require compliance and observance of all laws, rules and regulations of the

16

District and the State of Florida, by willfully neglecting to perform his designated duty by not implementing a policy or procedure that supersedes step two of the grievance procedure which eliminates review of a grievance by the employee against their immediate supervisor, thereby permitting defendant Volpi to circumvent unlawful retaliation, discrimination claims, contrary to Federal and State law[s].

## COUNT III

### CLAIM ONE AGAINST  RICHARD VOLPI, AND JEFFERY MOQUIN  UNFAIR LABOR PRACTICE ACT

62.     Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-61 above as if fully stated therein.

63.      In accordance of School Board of Broward County, Policy 4011(9), plaintiff applied for the position of *Building Operations Supervisor* to his immediate supervisor, defendant Volpi and  requested that to be considered for advancement to the position.

64.     Plaintiff consulted Israel Canales, "SBBC" Administrative Support,  Manager regarding the job promotion with a step twelve status. Mr. Canales informed plaintiff that he does qualify for the position.  Mr. Canales  then contacted Lorenzo Calhoun, who advised Mr. Canales  "that it will be taken care of by making the necessary transition because plaintiff met the qualification."

65.     Plaintiff alleges that defendant Volpi discriminated against him with malfeasance and the malicious intent to establish evidence for employment termination by ignoring plaintiff's medical deficiency and by a deliberate failure to pass plaintiff over for the position of *Building Operations Supervisor*, which plaintiff was qualified for and eligible. to meet.

66.     Plaintiff alleges that without reasonable notice or the opportunity for consideration and in spite of Mr. Calhoun's concurrence to place plaintiff as *Building Operations Supervisor*, that, defendant Volpi denied plaintiff's a promotion and instead placed Edwin Gutierrez, an unqualified non-veteran Hispanic male with less tenure than the plaintiff to the position of *Building Operations Supervisor*.

67.     Plaintiff alleges that defendant Volpi failed to pay plaintiff overtime wages contrary to the Equal Pay Act even though defendant Volpi acknowledged that plaintiff exceeded the work schedule hours.

68.     Thereafter, plaintiff notified defendant Volpi the he will be seeking back pay for the additional labor that he was required to perform due to having to work beyond his scheduled hours because Volpi restricted available staff personnel.

69.     Plaintiff alleges that defendant Volpi discriminated against him with deliberate indifference by written notice of unsupported claims of in subornation, contrary to Article 9, E7, BTU-TSP Agreement and § 1003.4505, Fla. Stat.

70.     Defendant Volpi then sent defendant Runcie a letter/notice "recommending that plaintiff receive a 3-day paid suspension for failing to follow reasonable attendance policies and progressive discipline" but failed to apply the same conduct against Michael Dalrymple who had not received any disciplinary actions after defendant Volpi discovered Michael Dalrymple unauthorized absences.

**COUNT IV**

**AGAINST JEFFERY MOQUIN FOR LIBEL AND UNFAIR LABOR PRACTICE**

71.     Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-70 above as if fully stated therein.

72.     The plaintiff filed a grievance alleging that defendant Moquin falsely stated to a potential job change candidate (Edwin Gutierrez) "that plaintiff and Israel had someone else in mind for the 'utilities service person already" without plaintiff's knowledge, permission or consent.

73.     Plaintiff submitted a memorandum notice to defendant Runcie of the abuse of Ms. Dunia Gill by defendant Lopez. After learning about the

19

abuse, defendant Moquin failed to perform his statutory obligation to reprimand defendant Lopez, who posed a risk to the safety of Dunia Gill and/or other staff personnel.  Instead, defendant Runcie acquiesced with the odious suspension recommendation of the plaintiff by the School Board.

## COUNT V

### ERIC M. CHISEM
### UNFAIR LABOR PRACTICES IN VIOLATION OF FLSA

74.    Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-73 above as if fully stated therein.

75.    As Head Facilities Serviceperson, plaintiff  was authorized to take corrective measures to accommodate crew members and other candidates
Under his supervision seeking continued employment and training which included advance notice from defendant Chisem of new employment criteria or policies which directly affects the night shift personnel.

76.    Plaintiff submitted a grievance on or about September 30, 2017 alleging defendant Chisem discriminated against plaintiff and other minority class employee's due to enactment of an unlawful 'Basic Facilities Service Person/Custodian' test culturally bias and not conducive to Latin and African Americans; and not appropriately necessary to prepare for employment qualification.

## CLAIM AGAINST ERIC M. CHISEM

77.     Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-76 above as if fully stated therein.

78.     Plaintiff is responsible for making the subordinates' daily assignments, and for supervising their work details at the KCW Building. A facility serviceperson is charged with the responsibility of providing a sanitary and safe environment. Each custodian should be oriented, trained, and supported during daily work in such a way as to enable personal fulfillment as well as achieving proper care of the site. Essentially, these employees have custody of the administrative building to ensure building sanitation, and meet all health care standards.

79.     Plaintiff advised defendant Chisem that persons with limited English proficiency must be afforded a meaningful opportunity to participate in programs that receive federal funds, yet, defendant Chisem implied that plaintiff's "SBBC" staff work routine was structured on the 2001 Department of Education "Maintenance & Operations Administrative Guidelines protocol for employment qualification without review of applicable standards.

80.     On or about August, 2016, defendant Chisem, failed to implement corrective measures to provide a conducive training diversity

21

curriculum which specifically designed to avert select ethnic groups or races from employment and/or advancement at SBBC, contrary to Federal guidelines and provisions of law and was not acknowledged by defendant Norton.

81.   Plaintiff alleges thatSBBC policy permitting the *Basic Facilities Service Person/Custodian' Test* directly infringes upon Federal standards that deny or have the effect of denying persons with limited English proficiency equal access to Federally funded programs for which such persons qualify.

82.   Rather than implementing a training program with adequate interpreter services that are needed for the class member to benefit from the training program, defendant Chisem deliberately infused the plaintiff and his subordinates to participate in the course without a proper interpreter.

**COUNT VI**

**DELIBERATELY INDIFFERENT BY RICHARD VOLPI**

83.   Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs1-82 above as if fully stated therein.

84.   Defendant Volpi knowingly began materially false accusations alleging that plaintiff failed to follow "SBBC" policy by not providing notice to Volpi's Secretary of prospective tardiness; and made false and

slanderous written allegations of excessive tardiness and insubordination. Yet, on October 10, 2016, Defendant Volpi authorized an exemption which refutes allegations of tardiness or absence, which specifically states ". . . Unless your work requirements are justified . . . " **(See FCHR Charge#201700954, Position Statement, at page 2, attached hereto and incorporated by reference as APPENDIX EXHIBIT "F")**

85.     Plaintiff submitted a grievance on October 19, 2016,   to Employee & Labor Relations Department alleging that Defendant Volpi was deliberately indifferent by failing to afford or provide overtime work opportunities to plaintiff and his staff subordinates as outlined by personnel payroll records, which plaintiff discussed with Defendant Volpi on October 10, 2016 and Defendant Volpi again declined to effectuate scheduling of overtime for the plaintiff or any night crew personnel which defendant Volpi afforded to day shift personnel.

86.     Consequently, defendant Volpi did not follow the overtime roster pursuant to the "SBBC" procedures.   Instead, defendant Volpi afforded overtime scheduling exclusively to day shift personnel and denied the same overtime work scheduling to plaintiff's night shift personnel.

87.     Plaintiff asserts that on or about March 2, 2016,   defendant Volpi continued application of retaliation by submitting improper

disciplinary action[s] against the plaintiff based upon plaintiffs' existing disability without justifications with the recommendation to the School Board for employee termination is unwarranted.

88.    Plaintiff alleges that defendant Volpi, engaged in a pattern of reprisals where defendant Volpi, issued oral and written reprimands and slanderous comments that have ultimately infringed or defamed Plaintiff's reputation and character commencing on February 18, 2018, by ignoring military service related disabilities and plaintiff's inability to perform certain details due to plaintiff's medical condition; and a constant process of intimidation or bullying by unlawful accentuation of authorized conduct under the ADA agreement; and the established FMLA accommodations where plaintiff was having a propensity for medical restrictions.    89.    Plaintiff specifically asserts that, following his notice to Israel Canales that Bettye Ray requested plaintiff to retrieve parking lot meter machines funds and deliver "SBBC" funds directly to her was suspicious which plaintiff perceived as "reported that he believed Bettye Ray was stealing the funds."

90.    Defendant Volpi improperly sought to impeach plaintiff by asking "what time did plaintiff leave the KCW building." In response, plaintiff advised "that he did not recall but that the security camera would

show the exact time that he exited the loading dock security gate." Defendant Vopli replied "that he will not look at the footage for verification, until plaintiff tell him the exact time he left KCW." At no time did defendant Volpi ever cite plaintiff for or allege that in his tardiness or absence that plaintiff abandoned his job. **(See email communication dated October 20, 2017, attached and incorporated by reference as APPENDIX EXHIBIT "G")**.

91.     During his employment tenure, Mr. Robinson continually experience disability 'flare-up[s]' and have had to either report to work at a K.C. Wright Building late or not at all.

92.     Plaintiff asserts that defendant Volpi's harassment against the plaintiff, affected plaintiff's working conditions and performance to the point that plaintiff was forced to take FMLA leave so that he could get relief from the anxiety and stress applied upon him.

93.     Plaintiff asserts that defendant Volpi made the working conditions for the night shift staff so intolerable at the KCW Building that any reasonable person in plaintiff's position would seek ramification of such conditions.

## COUNT VII

### BATTERY UPON
### PLAINTIFF BY RICHARD VOLPI

94.     Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-93 above as if fully stated therein.

95.     Plaintiff filed a grievance to employment relation department on October 19, 2016, which alleged that following a meeting at the School Board Room on October 16, 2016, he was passing Richard Volpi,  he was subjected to inappropriate contact by defendant Volpi.

96.     Plaintiff asserts that this misconduct was disturbing and altered the conditions of his employment under Volpi's supervision creating an untrusting and unethical working environment and one that plaintiff discerned not innocent but intentionally abusive to the point that, other than submission of electronic correspondence and/or grievances, plaintiff physically avoided defendant Volpi.

97.     Plaintiff states that the above stated harassment supports the supposition that the "SBBC"  administrators had "knowledge, or constructive knowledge" of the improper conduct by defendant Volpi and failed to investigate or take corrective action as set out in SBBC policy and procedures which restricts harassment and retaliation upon an employee that invokes the grievance process.

## COUNT VIII

## RICHARD VOLPI FOR RETALIATION

98.     Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-97 above as if fully stated therein.

99.     Plaintiff alleges that as a Night Shift *"Head Facilities Service Person"* he has been retaliated against by defendant Volpi, as a result of plaintiff filing complaint/grievances against defendant Volpi for failing to endorse promotion advancement;  for his reporting of improper governmental activities.

100.   On November 9, 2016, Volpi provided written directive to the plaintiff advising plaintiff to report to a meeting scheduled for November 16, 2016 for the specific purpose of pre-disciplinary meeting regarding plaintiff's alleged failure to comply with a directive of October 10, 2016 to be an act of retaliation.

101.   On December 5, 2016, Volpi issued verbal reprimand which alleged that plaintiff failed to comply with prior authorized directives. Contrastingly, Plaintiff asserts that defendant Volpi engaged in harassment, humiliating  tactics and deliberate indifferent against plaintiff by issuance of a SBBC BCSD letter directing plaintiff to report for a pre-disciplinary meeting

102.   Plaintiff filing a grievance On March 23, 2017, alleging consistent bullying, intimidation, and harassment in response to plaintiff's

exercise of the Right to redress the circumstances which has resulted in a strained relationship between the plaintiff and building tenants at the KCW Building environment depriving plaintiff of effectively performing his assigned duties, because building tenants were not receptive to plaintiff's authority as it relates to the operation and maintenance of KCW Building, thereby causing a security breach when plaintiff was under an urgent medical absence and unknown to the plaintiff, a co-worker failed to secure an exterior building door and instead contacted defendant Volpi's office without notice to plaintiff.

103.   Following defendant Volpi's investigation/inquiry as to what time did plaintiff leave the KCW building, the plaintiff sent another email about the defendant Volpi and he was suspended and then terminated for continuing to be "preoccupied" with the grievance progress and resolution[s].

104.   The substance of plaintiff's complaints is intertwined with the egregious retaliation measures implemented by defendant Volpi; and those employees under his direct authority which must be decided upon the merits of plaintiff's grievances collectively.

## COUNT IX

## <u>JEFFEREY MOQUIN  FOR DELIBERATE INDIFFERENCE</u>

105.    Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-104 above as if fully stated therein.

106.   On or about March 23, 2017, plaintiff initiated the grievance procedure by filing a grievance pursuant to SBBC Policy 4015 to the Employee Relation Department alleging that, on or before March 6, 2017, during a grievance conference with defendants Gutierrez and Moquin in the course of speaking with Gutierrez, stated to Gutierrez that, "Marlowe and Israel had someone else in mind for the position already."

## COUNT X

### DELIBERATE INDIFFERENCE
### JEFFERY MOQUIN AND CRAIG KOWALSKI

107.    Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-106 above as if fully stated therein.

108.    On or about August 18, 2015, video camera footage on the tenth floor inside the KCW Administrative Building recorded a verbal assault by defendant Lopez upon Ms. Dunia Gill.   Thereafter plaintiff notified defendant Runcie but no review or corrective action was implemented contrary to § § 447.501(1)(b), Fla. Stat.

109. Plaintiff further alleges that defendants Kowalski,   and MoQuin" intentionally concealed"  the video footage of the verbal abuse by Erik Lopez upon Dunia Gill.

## COUNT XI

## RICHARD VOLPI  FOR VIOLATING HEALTH  INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA)

110.   Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-109 above as if fully stated therein.

111.   Plaintiff, alleges that defendant Volpi violated plaintiff's confidential health information rights by failing to comply with "SBBC" Policy 4001.1,6.a.2., by exposure of his medical infirmities' to an unrelated personnel on or about March 28, 2017, without notice or consent to persons unknown and unrelated during two pre-disciplinary meeting[s], on November 30, 2016 and March 27, 2017 in openly discussing plaintiff's medical deficiencies'  in the presence of a third party which was  not authorized by the plaintiff.

## COUNT XII

## AGAINST DOUGLAS G. GRIFFIN UNFAIR LABOR PRACTICE

112.   Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-111 above as if fully stated therein.

113.    On or about September 24, 2016, plaintiff forwarded a memo to Doug Griffin inquiring about a February 18, 2016 grievance relating to "working out of classification" which plaintiff was not compensated for.

30

114.   Defendant Griffin knowingly refused to and deliberately failed to acknowledge plaintiff's concern by either appointment or documentation of a mandatory employee contract provision providing necessary processing of documentation and/or its satisfaction.

## COUNT XIII

## AGAINST SUSAN COOPER FOR UNFAIR LABOR PRACTICE

115.   Plaintiff re-alleges and incorporates herein by reference the preceding allegations in paragraphs 1-114 above as if fully stated therein.

116.   Plaintiff first commenced his pursuit of equal compensation on or about February 18, 2016, by filing a grievance with the "SBBC" employee  relations department, seeking sought job title reclassification based upon working out of classification duties without adequate compensation for more than a seven-plus (7) years; qualifications based upon continued "SBBC" satisfactory employee evaluations from 1998 to 2018 and proficiency certifications[4];  and facility site size capacity. Consequently, defendant Cooper evaluated plaintiff's contentions and presented the matter to the school board for consideration.  However, defendant Cooper failed to represent to the school board that plaintiffs'

---

[4]      See copy of ""SBBC" non instructional employee performance evaluation[s]" conducted annually beginning May 3, 1999 through June 28, 2017 and relevant professional accommodation notices, attached and incorporated by reference as APPENDIX  EXHIBIT "I" and required competency or proficiency certifications as APPENDIX  EXHIBIT "J".

department head, Canales, recommended the pay salary increase which would ultimately alleviate plaintiff's effort to be classified to a step twelve position and receipt of a commensurate salary.

117.   Defendant Cooper knowingly endorsed reclassification without the salary increase by stating that "plaintiff was already the recipient of dual pay salary, when in fact, the salary based had not been applied or provided in plaintiff's regular pay scale or that the classification as *Building Operations Supervisor* had been approved.

## COUNT XIV

## **WRONGFUL TERMINATION**

118.   Plaintiff realleges and adopts, as fully set forth in of the allegations in paragraphs 1– 117 and states:

119.   Plaintiff asserts that the Defendant[s], individually and collectively violated Section 760.10(1), Florida Statute, which relevant part states:

> ". . . it is an unlawful employment practice for an employer to ". . . To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, *handicap*, or marital status."

120.  Plaintiff asserts that the Defendant[s], individually and collectively violated Title VII of the Civil Rights Act of 1964, which provides in relevant part:

MAKES IT ILLEGAL TO DISCRIMINATE AGAINST SOMEONE ON THE BASIS OF RACE, COLOR, RELIGION, NATIONAL ORIGIN OR SEX. THIS LAW ALSO PROTECTS EMPLOYEES AGAINST RETALIATION FOR GOING FORWARD WITH A CLAIM REGARDING DISCRIMINATION IN THE WORKPLACE.

121.  Plaintiff asserts that the Defendant[s], individually and collectively violated Section 760.01, Florida Statute, which provides in relevant part:

THE SCHOOL BOARD OF BROWARD, FLORIDA PROHIBITS ANY POLICY OR PROCEDURE WHICH RESULTS IN DISCRIMINATION ON THE BASIS OF AGE, COLOR, DISABILITY, GENDER IDENTITY, GENDER EXPRESSION, GENETIC INFORMATION, MARITAL STATUS, NATIONAL ORIGIN, RACE, RELIGION, SEX OR SEXUAL ORIENTATION.

122.  Plaintiff asserts that the Defendant[s], individually and collectively violated Section 440.205, Florida Statute, which provides in relevant part:

NO EMPLOYER SHALL DISCHARGE, THREATEN TO DISCHARGE, INTIMIDATE, OR COERCE ANY EMPLOYEE BY REASON OF SUCH EMPLOYEE'S VALID CLAIM FOR COMPENSATION OR ATTEMPT TO CLAIM COMPENSATION UNDER THE WORKERS' COMEPENSATION LAW.

123.  Plaintiff asserts that the Defendant[s], individually and

33

collectively violated Title I of the Americans with Disabilities Act of 1990

(ADA), which provides in relevant part:

MAKES IT ILLEGAL TO DISCRIMINATE AGAINST A QUALIFIED
PERSON WITH A DISABILITY FROM EMPLOYMENT OR DURING
EMPLOYMENT.

124.   Under Section 230.22(1)(2), Florida Statute, both the School

Board ("SBBC") and defendant Runcie held a fiduciary duty for efficient

operation and improvement for the school district, including but not limited

to, enforcing, without delay all State and Federal laws pertaining to unlawful

discrimination, according Section 760.10(1(a), Florida Statute.

125.   On March 23, 2017, Plaintiff filed a grievance which alleged

that defendant Volpi's failure to investigate employee complaints at the

KCW building fueled the claimed hostile work environment which caused

plaintiff's medical condition to be aggravated to the point that plaintiff either

arrived late to his work detail or not at all, which defendant Volpi failed to

recognize or acknowledge and used such circumstances as a tool or means

for unwarranted verbal or written reprimands of disciplinary write ups and

suspension[s] without "just cause" as required by Article 2 and 15 of the

Collective Bargaining Agreement, FMLA and ADA; and employment

termination, contrary to the approved Family Medical Leave Act (FMLA)

benefit[s] approved by "SBBC" Administrator Marjorie Fletcher of the Leaves Department. § 110.221(2), (3), F.S.

126.  As a result of plaintiff's filing or attempting to file a claim for retroactive compensation for working out of classification and correlating benefits, each defendant[s] unlawfully and maliciously conspired together to orchestrate a scheme fraudulently designed to reflect a pattern of employee disobedience, by the plaintiff in spite of each defendant's knowledge of plaintiff's protected FMLA status specifically with a deliberate intent to discharged or terminated the plaintiff without just or reasonable cause in retaliation upon plaintiff because plaintiff filed internal grievances and of his disclosure of unlawful conduct performed by the defendant[s], individually and collectively.

127.  The actions of the defendant[s], individually and collectively, were deliberate, willful, egregious and outrageous without regard for plaintiff's protected constitutional rights and dignity.

128.  The foregoing claim[s] of discrimination, harassment, libel and wrongful termination by the defendants, separately and jointly, directly affected plaintiff to the point that plaintiff was forced to take sick days, so that he could get relief from those intolerable conditions which aggregated plaintiffs' 2016 VA diagnosis and known medical condition[s] to the extent

of being classified 100% disable due to the continued forms of both physical and emotional abuse; and unlawful conduct applied by the defendant's individually and collectively.

129.   Plaintiff asserts, that the defendant[s] and or their agents (sic) willfully, maliciously and intentionally inflicted emotional distress upon the plaintiff without just cause with the intent of harming the plaintiff and as a direct and proximate cause of defendant's and or their agents actions, the plaintiff has been irreparably harmed.

130.   Plaintiff asserts, that the defendant[s] and or their agents (sic) willfully, maliciously and intentionally without just cause, slandered the plaintiffs' name and reputation in the work force and community by knowingly making false, maliciously and intentional statements about the plaintiff, plaintiffs' work ethnics, duties and performance, and as a direct and proximate cause thereof the defendant's and or their agents have irreparably harmed the plaintiff.

131.   Plaintiff asserts, that the defendant[s] and or their agents (sic) willfully, maliciously and intentionally without just cause, engaged in deceitful labor violation practices and maliciously with deliberate intent fraudulently calculated to harm the plaintiff and to orchestrate false and

36

fraudulent evidence or information and as a direct and proximate cause thereof, the plaintiff has been irreparably harmed.

132.  Plaintiff asserts, that as a result of defendants' actions as set forth herein, plaintiff is required to seek and retain an attorney and will incur cost which the defendant[s] are liable.

## CONCLUSION

As a direct and approximate result of the foregoing conduct, the plaintiff has suffered a wrongful employment termination, in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1964) Title VII; 42 U.S.C. § 1981, § 1981(a), et seq. and 42 U.S.C. § 1983; the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. (1964) Title VI; the Florida Civil Rights Act, Florida Statute § 760.01, et seq. ("FCRA"); Protection of School Speech, Fla. Stat. § 1003.4505; and First Amendment, U.S. Const. Amend. I.

## DAMAGES AND RELIEF REQUESTED

**WHEREFORE,** based upon computation and calculations derived from pay scale standards, the plaintiff is therefore entitled to an amount of a substantial monetary judgment and award from each defendant as set forth below:

Plaintiff demands monetary judgment against the defendants individually and  collectively, in the form of economic damages, including

but not limited to lost wages, retroactive compensation; reinstatement of full benefits, front and back pay; and other compensatory damages allowable by law; cost and expense; prejudgment and post judgment interest against the defendants individually and collectively.

## JURY TRIAL

<u>Plaintiff hereby demands trial by jury</u> for all issues so triable.

**WHEREFORE**, plaintiff, Marlowe D. Robinson, and any other relief the court deems proper and just.

Respectfully submitted

Marlowe D. Robinson, Pro Se
Complainant/Plaintiff
4920 NW 73 Avenue
Lauderhill, FL 33319
Telephone: (954)934-4542
Email: marlo102@yahoo.com

Tamisha Sanchez
Commission # HH 41215
Commission Expires 09-10-2024
Bonded Through - Cynanotary
Florida - Notary Public

**STATE OF FLORIDA**          )
                                           )
**COUNTY OF BROWARD**     )

**BEFORE ME**, the undersigned authority, personally appeared, Mr. Marlowe D. Robinson, who is personally known to me or has presented Florida Driver License Number: _R152-544-73-425-0_ , as identification, and states that the foregoing facts and statements are true and correct.

SWORN AND SUBSCRIBED TO this 9 day of _SEPTEMBER_ , 2022.

38

**MY COMMISSION EXPIRES:** 9/10/2024

_____

**NOTARY PUBLIC OF FLORIDA**

Tamisha Sanchez
Commission # HH 41215
Commission Expires 09-10-2024
Bonded Through - Cynanotary
Florida - Notary Public